In the Matter of EUGENIA QUINLAN, Respondent. COMPTROLLER OF THE CITY OF NEW YORK et al., Appellants.

(Argued May 18, 1936; decided July 8, 1936.)

*Paul Windels, Corporation Counsel* (*Lewis Orgel, Paxton Blair* and *Daniel M. Cohen* of counsel), for appellants.

*Grover C. Sniffen* for respondent.

FINCH, J. Francis J. Quinlan died in 1904, while domiciled in Louisiana, leaving surviving an illegitimate child, Frances J. Quinlan, and a daughter-in-law, Eugenia Quinlan, the petitioner herein. At the time of his death Francis J. Quinlan owned several parcels of property in the Bronx. He left a holographic will giving a life interest in his property to his illegitimate daughter and the fee ownership to the daughter-in-law. The will was not witnessed in accordance with the law of New York and, therefore, was invalid in this State and could not operate to pass title to the land. Nor were there any heirs who could take by intestacy since the daughter was illegitimate. As a result the property escheated to the State of New York. (*Matter of People* [*Melrose Ave.*], 234 N. Y. 48.)

The illegitimate daughter died in 1912. In 1915 the city of New York commenced proceedings to condemn various parcels of property including one which had been owned by Francis J. Quinlan at the time of his death. Pursuant to this proceeding title to the parcel was supposedly vested in the city in 1916. In June, 1919, an award for one of the Quinlan parcels of approximately $3,700 was made to unknown owners and in the same decree an assessment for benefit of about $2,700 was levied against the remainder of the property.

In 1918 the Legislature passed a special act (Laws of 1918, ch. 575) authorizing the Commissioners of the Land Office to release to Eugenia Quinlan, the petitioner, all the property of Francis J. Quinlan which escheated to the State upon his death. Not until 1933, however, did the petitioner make application pursuant to this special act and then the Board of Commissioners of the Land Office quitclaimed to her the land of Francis J. Quinlan still held by the State.

An order made and entered in the Supreme Court in 1924 had adjudicated that the State of New York by virtue of the special act of 1918 had released its interest in the property of Francis J. Quinlan to Eugenia Quinlan and that she individually was entitled to receive payment of the funds received for such property. It was held that although the language of the statute was permissive in form it should be construed as imperative. Hence the delay by petitioner in making application to the Commissioners of the Land Office was not a bar to the relief which she sought. (Public Lands Law [Cons. Laws, ch. 46], § 40, now § 39.) Thereafter the petitioner made application for the award in condemnation involved herein. The matter was referred to a referee who reported that the award be paid to the petitioner upon a tender to the city by her of a deed to the condemned property. The Special Term modified so as to require that there be deducted from the award the assessment for benefit

and all other taxes and assessments which were outstanding liens against the condemned property prior to its acquisition by the city. The Appellate Division further modified and held that the assessment for benefit was not deductible from the award and that only such taxes and assessments should be deducted as were liens on the property prior to 1904, the date of the escheat.

On this appeal the city, as appellant, raises only the question whether the assessment for benefit may be deducted from the award.

The city of New York urges with force that when the assessment was levied against the remaining property, after a portion had been condemned, the title to this remaining property was in the petitioner having been vested by the special act (Laws of 1918, ch. 575). This was adjudicated by the proceedings in the Supreme Court commenced in 1922 to which the petitioner here was a party which held that there had been an escheat to the State upon the death of Francis J. Quinlan, but by the special act enacted in 1918 the State had thereupon released all its interest to Eugenia Quinlan. Referring to that statute the referee stated in his report that it " specifically and unequivocally authorizes the commissioners of the land office to release the title of the State, if any, to the property in question to Eugenia Quinlan. The language used though merely permissive in form will be construed as imperative."

This holding, confirmed by the Supreme Court and never appealed from, adjudicates that Eugenia Quinlan became the owner of the escheated property of Francis J. Quinlan on May 9, 1918, the date when the special act took effect (Laws of 1918, ch. 575). That determination, therefore, is binding in this proceeding as to the date when Eugenia Quinlan acquired title to the property affected by the assessment in this proceeding. Consequently the petitioner and not the State was the owner at the time the assessment was levied. Moreover, unless

the petitioner can rely on possessing title at the time the special act took effect she is debarred from ever obtaining title by section 39 of the Public Lands Law. The Public Lands Law then and now (§ 40, now § 39) specifically provides that an application for a grant under special law must be made within one year after the passage of such law. An assessment for benefit becomes a lien ten days after the filing of the final decree in the office of the Comptroller. (Greater New York Charter, § 1017; Laws of 1901, ch. 466, as amd.) In this case the final decree, dated June 19, 1919, was filed in the office of the Clerk of Bronx county on October 6, 1919, and thereafter in the Comptroller's office. Since the title to the property was in the respondent at the time of the levying of the assessment, the latter was validily imposed. It was error, therefore, to hold that the property belonged to the State at the time of the final decree and hence that the assessment was invalid for failure to give the State the notice required by the Public Lands Law (§ 19).

There is also another reason which sustains the deduction of the assessment from the award. The city of New York lacks the power to condemn property, title to which is in the State, unless such power is expressly conferred upon the city by the Legislature. (*Matter of City of New York* [*Cruger Ave.*], 238 N. Y. 84.) The State having acquired title to the Quinlan property, the condemnation proceedings in 1915 were ineffectual. The petitioner, however, after acquiring title to the property, had the right to adopt and ratify the condemnation proceedings to the extent, at least, of estopping her from taking a contrary position. To adopt and ratify the condemnation proceedings was what she attempted to do when she made application for the award.

The question presented, therefore, is whether when the petitioner based her right to obtain the award upon the condemnation proceedings, she could at the same time

repudiate the assessment for the cost of the condemnation award and prevent the city from deducting from the award this assessment for benefit levied against the uncondemned property. The Appellate Division and the referee in adjudging that the city could not deduct the assessment, felt bound by the construction which they placed upon a decision of this court (*Matter of People* [*Melrose Ave.*], *supra*). In the *Melrose* case it was held that an attempt to levy an assessment against property owned by the State was ineffectual unless notice was given to the State pursuant to the Public Lands Law (§ 21, now § 19). For the purpose of this point we may assume that title to the property was in the State at the time the assessment for benefit was levied. Even assuming, therefore, that the assessment was ineffectual as against the State it does not follow that such assessment cannot be deducted from an award by the city when the petitioner, an individual to whom the State has conveyed its interest in the property and award, seeks to collect the award. It is true that the power of eminent domain and the levying of assessments under the taxing power are proceedings independent of each other even though for various reasons they are often grouped together. (*Dyker Meadow Land & Improvement Co.* v. *Cook*, 3 App. Div. 164, 168; affd., 159 N. Y. 6; *Genet* v. *City of Brooklyn*, 99 N. Y. 296, 307; *Roosevelt Hospital* v. *Mayor*, 84 N. Y. 108, 111.) At the same time the award and the assessment for benefit are so interlinked that the award makes necessary the levying of the reciprocal assessment for benefit. True the State with its sovereign immunity from the exercise against it by the city of the power of eminent domain and the power of taxation might have affirmed the condemnation proceedings and claimed the award without subjecting itself to the assessment. The transfer to the petitioner of the interest of the State in the property and the award does not, however, entitle her to the same position as that occupied by the State. Immunity due to sovereignty

is personal to the sovereign. The assessment measuring the cost of the award and out of which it grew, while an independent proceeding, is nevertheless so connected with the award that an individual could not claim the award without being subject to the obligation of paying the assessment.

It follows that the order of the Appellate Division should be modified to the extent of providing that the assessment for benefit should also be deducted from the award, and as so modified affirmed, with costs in this court to the appellants.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Ordered accordingly.